BY THE COURT.
It does not appear that the defendant appeared and ci'oss-examined the witness. The proceeding is ex parte, and the depositions can only be admitted in evidence if they are taken conformably with the statute. There is a want of conformity —the law requires the notice to be sealed up and returned with the deposition — that is not done. We have no authority to x-eceive depositions taken under notice in evidence except the power is conferred by the statute. This deposition is not taken and returned according to the statute, and must be x-ejected.
The complainant then offered to prove certain convei-sations between the parties and between the defendant and his neighbors, on the subject in dispute.
The defendant objected, that the declarations of the parties were incompetent under our law.
*BY THE COURT. The statute, with a view to prevent [633 divorces by collusion, prohibits the receipt of the admissions or confessions of either party in evidence. But when it becomes necessary to show any transaction of either party, the conversation, bona fide had, has been unifoi’mly x-egarded as a part of it, and admis *654 sible; the court being careful to exclude everything that could, by the most strict construction, be looked upon as originating in collusion, or the desire of either party to make evidence to favor the application of the other party. Admitted.
Much evidence was then adduced, from which it appeared that the complainant, being on a short visitto Greenville, in 1831, became acquainted with the defendant, a widower, and was induced to marry him before her return home to her friends in Vermont; though she had left business unsettled there and was desirous of returning soon. After a few months, some dissatisfaction was noticed between them. She found fault and reproved his children by a formerwife. They left together for Vermont, and went to her father’s. After a few days, without saying anything to her or her parents, he left there on pretence of business at Burlington, whence he wrote to her apprising her of his intention to abandon her, and that he was then getting on a steamboat to return to Ohio — that explanations were useless' — -as they were unsuited to each other. WhenTe returned home, in reply to inquiries for her, he said she was detained behind at her father’s on business for a short time. She came back with her uncle in about two months. In the meantime the defendant’s daughter had got married, her husband had taken possession of the house, and the defendant was boarding with them.
The defendant refused toreceiveher as his wife, to live with her, or to suffer her to control his affairs, but said if she chose she could take a room in the house, have provision and take care of herself. From that time she has been restricted to her room, with the privilege of getting provision below, and working in an outhouse and to go into the cellar with some of the family. Much quarrel-ling and scolding back and forth has been the consequence. The defendant has threatened to take her child from her, sometimes violently. Once he struck the complainant several blows with a cowhide, and at another time tore her cap off — -she threw hot water. There was no p>eace in the family, and their quarrels disturbed the whole neighborhood — he was rather sulky, and she had declared her intention to devil him. Both parties were respectably connected. His property was shown to be $2,000 or $2,500.
634] *BY THE COURT. It appears evident these parties cannot live together in harmony. Not only the household, but the neighborhood are annoyed by the strife and bickerings between them. Neither of them are without fault: indeed, both seem much to blame. The defendant’s leaving her in Vermont, without pre *655 vious information, or conversation with her or her friends, was decidedly reprehensible. Her temper in the family was intolerable —and only finds a palliation in the circumstances in which she was placed. Imprisoned in her own house — limited in her range through it to the will of hirelings and the step-children — driven to the outhouse to cook her food — tantalized with threats of taking her child from her, her clothes torn and her back lacerated with a cowhide, it required more than ordinary philosophy, and extraordinary good temper, to pursue a mild and prudent conduct, such as would become a lady. A man cannot justify under hardly any possible circumstances inflicting bodily chastisement upon a woman; much less can a husband be tolerated or justified in taking a cowhide to his wife. She has given way to her temper — but has she not been provoked by her cooler husband beyond endurance ? The circumstances show that to be the case. At any rate they are unfit to live together. Out of their joint means she and the child should be supported, and we order the child to her custody and guardianship. Enjoin him further interfering with the child, or any property she brought to him, or her future earnings, and that he pay the clerk in sixty days for her use $50, and $37.50 every six months thereafter, for her support during their joint lives. If default be made in the payment execution to issue as at law.
[Bill of review does not lie in divorce cases; s. c. 7 O. 2d pt. 125.]